# Exhibit I

# WILMERHALE

August 10, 2009

Via First Class Mail and Email

Craig W. Smith, Esq.
Robbins Umeda LLP
600B Street, Suite 1900
San Diego, CA 92101

Jeffrey B. Rudman

+1 617 526 6912 (t)
+1 617 526 5000 (f)
jeffrey.rudman@wilmerhale.com

Dear Craig:

This will acknowledge your letter of August 7, 2009. Rather than continue our correspondence, why don't we just agree that you have done nothing to show me that Ms. Vancil owned any iStar shares at the time the alleged wrongs which you describe in your letter of June 1, 2009 occurred?

Very truly yours,

Jeffrey B. Rudman

JBR/dk

cc: Paul Engelmayer, Esq.

# Exhibit J

# ROBBINS UMEDA LLP

ATTORNEYS AT LAW

BRIAN J. ROBBINS*
MARC M. UMEDA
FELIPE J. ARROYO
GEORGE C. AGUILAR
S. BENJAMIN ROZWOOD
KEVIN A. SEELY†
CRAIG W. SMITH
CAROLINE A. SCHNURER

600 B STREET, SUITE 1900
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 525-3990
FACSIMILE (619) 525-3991

KELLY M. MCINTYRE
LOUIS A. KERKHOFF
SHANE P. SANDERS
REBECCA A. PETERSON
ASHLEY R. PALMER
DANIEL R. FORDE
ARSHAN AMIRI
JULIA M. WILLIAMS
GREGORY E. DEL GAIZO
ERIN P. FRASER
DAVID L. MARTIN
JAY N. RAZZOUK

*Admitted in CA & CT
†Admitted in CA, CNMI & Guam

September 2, 2009

**VIA E-MAIL and U.S. MAIL**
jeffrey.rudman@wilmerhale.com

Jeffrey B. Rudman
Wilmer Hale LLP
60 State Street
Boston, MA 02109

Re:  *Shareholder Demand Letter*

Dear Jeff:

Thank you for your August 10, 2009 letter. We have cited controlling authority holding that a shareholder's declination to provide proof of standing to sue is not a proper basis for refusal to consider a shareholder's demand. We have asked you repeatedly to provide us with any contradictory authority of which you are aware. To date, you have ignored our request.

We ask once again that you confirm whether iStar Financial Inc.'s Board of Directors has, in fact, decided to refuse Ms. Vancil's demand on this basis. For your convenience, we have attached a hardcopy of Ms. Vancil's July 2009, account statement showing her holdings in iStar Financial.

Very truly yours,

CRAIG W. SMITH

DRF/klc

# Exhibit K

# WILMERHALE

September 9, 2009

VIA FIRST CLASS MAIL AND EMAIL

Craig W. Smith, Esq.
Robbins Umeda LLP
600 B Street, Suite 1900
San Diego, CA 92101

Jeffrey B. Rudman

+1 617 526 6912(t)
+1 617 526 5000(f)
jeffrey.rudman@wilmerhale.com

Dear Craig:

This will respond to your most recent letter dated September 2, 2009. Permit me to review the bidding thus far.

On June 1, 2009 you wrote that your firm had been retained to represent Addie Vancil. You complained of conduct occurring from July 2, 2007 to March 6, 2008. Thereafter, you made certain demands.

Neither you nor your client initially offered any proof of her iStar share ownership when we corresponded. After much hemming-and-hawing, on July 23, 2009 you provided a heavily redacted brokerage statement of some sort which you said showed Ms. Vancil owned 1,000 shares of iStar as of July 13, 2009, or, more than two years after the commencement of the relevant period and approximately 17 months after the close of the relevant period. Even you did not claim that Ms. Vancil owned shares during the July 2007 to March 2008 period. You did suggest she was contemplating litigation if iStar didn't respond "appropriately" to her demands.

In the course of our correspondence, I offered that, given the chronology, Ms. Vancil could not sue as she did not have standing. You ignored that point, but cited the *Schick* case which, in your most recent letter, you claim constitutes "controlling authority."

Without spending much time on the fact that *Schick* is a Delaware decision and that iStar is a Maryland REIT, the *Schick* case does indeed hold that anybody, including a "busybody," can send a demand letter to the corporation. It does not say that a busybody has standing to bring a derivative action.

The court observes that, in the nature of things, a Rule 23.1 demand serves a "notice function." *Schick at 1240.*

The iStar Board had notice of your client's "grievances" because they are embodied in the direct suit that Coughlin Stoia brought well before your letter arrived on or about June 1. iStar has engaged very competent counsel to address the Coughlin Stoia matter. "Notice" provided by you or Ms. Vancil is at best redundant.

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109
Beijing   Berlin   Boston   Brussels   Frankfurt   London   Los Angeles   New York   Oxford   Palo Alto   Waltham   Washington

# WILMERHALE

Page 2

More critically, the decision says:

> *The board has no obligation to take any specific type of action to comply with a demand under Rule 23.1.* The board may, for example, ignore the demand, or it may take other action it deems appropriate if, in the exercise of its good faith judgment the circumstances indicate that the corporation's interest would be served thereby. (emphasis supplied)

*Id.*

I have tried to read quite closely the most recent enclosure you sent me. It appears to be a Fidelity investment report for Ms. Vancil's account for the month of July 2009. It seems to show that, as of July 31, 2009, she owned 1,000 shares of iStar. The document you previously sent me seems to show that as of July 13, 2009, Ms. Vancil owned 1,000 shares of iStar. Once again, nothing shows me that she owned shares as of the July 2, 2007 to March 6, 2008 time frame.

Equally troubling is that nothing you have delivered to me thus far shows that she owned shares as of June 1, 2009, the day you wrote: "[o]ur Firm has been retained to represent Addie Vancil, a *shareholder* of iStar Financial, Inc., ("iStar" or the "Company"), in connection with breaches of fiduciary duty by members of iStar's Board of Directors (the "Board") and certain of the Company's current and former executive officers." (emphasis supplied)

Could I politely suggest that our correspondence now come to an end? The law is clear: to be an appropriate derivative plaintiff, that plaintiff needs to demonstrate continuous share ownership, meaning ownership at the time of the wrongs alleged, ownership at the time of demand, at the time of the filing of the derivative suit, and for the duration of the suit. Despite every opportunity, you have repeatedly declined to demonstrate your client's continuous ownership of iStar shares.

Very truly yours,

Jeffrey B. Rudman

JBR/dk

# Exhibit L

# ROBBINS UMEDA LLP

ATTORNEYS AT LAW

| | | |
|---|---|---|
| BRIAN J. ROBBINS* <br> MARC M. UMEDA <br> FELIPE J. ARROYO <br> GEORGE C. AGUILAR <br> S. BENJAMIN ROZWOOD <br> KEVIN A. SEELY† <br> CRAIG W. SMITH <br> CAROLINE A. SCHNURER | 600 B STREET, SUITE 1900 <br> SAN DIEGO, CALIFORNIA 92101 <br> TELEPHONE (619) 525-3990 <br> FACSIMILE (619) 525-3991 | KELLY M. MCINTYRE <br> LOUIS A. KERKHOFF <br> SHANE P. SANDERS <br> REBECCA A. PETERSON <br> ASHLEY R. PALMER <br> DANIEL R. FORDE <br> ARSHAN AMIRI <br> JULIA M. WILLIAMS <br> GREGORY E. DEL GAIZO <br> ERIN P. FRASER <br> DAVID L. MARTIN <br> JAY N. RAZZOUK |

*Admitted in CA & CT
†Admitted in CA, CNMI & Guam

November 6, 2009

**VIA E-MAIL AND U.S. MAIL**
jeffrey.rudman@wilmerhale.com

Jeffrey Rudman
WILMER HALE LLP
60 State Street
Boston, MA 02109

  Re: *Shareholder Demand Letter*

Dear Jeff:

  I write in response to your letter dated September 9, 2009. Your letter contains quite a bit of argument and characterization, and yet another round of backhanded *ad hominem*, which we will continue to ignore. What is missing is a clear and plain statement of iStar Financial, Inc.'s ("iStar") Board of Directors' position with respect to Ms. Vancil's demand.

  Is it the Board's position that it will not investigate and substantively respond to the issues raised in Ms. Vancil's demand unless and until she proves to your satisfaction that she owned iStar Financial shares at the time of the alleged wrongdoing and has owned iStar shares continuously since then? This is a simple question to which we would appreciate a clear and direct answer. If there is some other basis for what appears to be a decision by the Board to refuse Ms. Vancil's demand without an investigation and report, please provide a clear and complete statement of those grounds.

  We seek this clarification in order to avoid potentially costly misunderstandings. For example, you have assumed from our disagreement about whether Ms. Vancil must demonstrate her standing to sue before the Board would be obligated to investigate her demand that Ms. Vancil does not have standing to sue. You should make no such assumption. Ms. Vancil has standing to sue.

*Shareholder Demand Letter*
November 6, 2009
Page 2

      Regardless, Ms. Vancil's standing to sue has no bearing on the Board's duties in responding to her demand. We have been over this ground before, but your position with respect to the legal basis for the Board's insistence that Ms. Vancil prove that she has standing to sue has changed. Your most recent letter suggests that we discontinue our correspondence because Ms. Vancil has not proven that she would have standing to sue, but you concede, as you must, that under Delaware law, "the 'entitlement' or not of one to make a demand under Rule 23.1 is, itself, irrelevant to a board's duty upon receiving such a demand ... ." *Schick*, 533 A.2d at 1240-41 ("What is *not* a relevant characteristic of information in this setting is whether the source of it is 'entitled' to force it upon the board.") (Emphasis in original). Your argument now seems to be that Delaware law is not controlling as to a Maryland REIT. I do not need to tell you that, with the notable exception of the Maryland Supreme Court's decision regarding the standard for pleading demand futility (*Webowsky v. Collumb*, 766 A.2d 123 (Md. 2001)), Maryland courts generally follow Delaware corporate law on questions as to which Maryland appellate courts have not had occasion to rule.

      Your current letter cites no contrary authority from Maryland or any other jurisdiction. Indeed, a review of the bidding, as you put it, shows that you have never cited any authority to support your insistence that we must prove Ms. Vancil's standing to trigger the Board's obligation to investigate reasonably and in good faith the issues identified in her demand. Instead, your September 9 letter makes a new argument: That iStar's Board had notice of Ms. Vancil's "grievances" from the shareholders' securities fraud class action, *Citiline Holdings, Inc. v iStar Financial Inc., et al.*, Case No. 1:08-cv-03512-RWS (S.D.N.Y. filed Feb. 2, 2009), and "iStar has engaged very competent counsel to address" the class action.

      As to your new argument, Maryland and Delaware law are clear and consistent concerning a board's duty to investigate upon receiving a shareholder demand. *See, e.g., Bender v. Schwartz*, 917 A.2d 142, 152 (Md. App. 2007) ("Once a demand is made, the corporation's board of directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded litigation is in the best interests of the corporation."). Suffice it to say, the engagement of counsel to defend iStar and the individual officers and directors named defendants in the securities class action hardly qualifies as evidence that the Board has addressed independently, reasonably, and in good faith the issues raised by Ms. Vancil's demand. By her demand, Ms. Vancil seeks, among other things, to hold certain iStar fiduciaries responsible for exposing iStar to liability for securities fraud, including the very corporate fiduciaries that defense counsel in the securities class action represent. Absent a far more detailed explanation of just how class action defense counsel have assisted the Board in addressing the issues raised in Ms. Vancil's demand and of what exactly the Board has done to address the wrongdoing alleged therein, we will have no choice but to treat your correspondence as a peremptory refusal of Ms. Vancil's demand.

      In assessing whether the Board's response falls within the ambit of the business judgment rule, it will be important to know whether the Board has refused the demand based on: (1) an unfounded factual assumption that she does not have standing; (2) a unfounded legal position that the Board may refuse the litigation demands of shareholders who do not first prove to the satisfaction of the Board that they would have standing to sue; and/or (3) the (undisclosed and unexplained) work of defense

*Shareholder Demand Letter*
November 6, 2009
Page 3

    defense counsel in a related securities class action who represent the corporate fiduciaries who are among the targets of the litigation demand.

    We look forward to your response to these important questions.

Very truly yours,

CRAIG W. SMITH

433478

# Exhibit M

# WILMERHALE

Jeffrey B. Rudman

+1 617 526 6912 (t)
+1 617 526 5000 (f)
jeffrey.rudman@wilmerhale.com

November 23, 2009

*VIA FIRST CLASS MAIL AND EMAIL*

Craig W. Smith
Robbins Umeda LLP
600 B Street, Suite 1900
San Diego, California 92101

Re: iStar Demand Letter

Dear Craig:

    We are in receipt of your letter dated November 6, 2009.

    We are, regrettably, at an impasse. Despite repeated requests, you still will not provide proof of your client's continuous ownership of iStar stock, which you do not dispute is the prerequisite for bringing a shareholder derivative suit. Without providing any proof, or even any explanation, you assure me in your letter that your client, Ms. Vancil, has standing to sue. Lewis Carroll notwithstanding, the fact that you have told me this thrice does not make it true. *See* Lewis Carroll, *The Hunting of the Snark* 3 (1876) ("I have said it thrice: What I tell you three times is true."). iStar cannot responsibly take your representations on faith when an issue as crucial as whether your client has standing to sue *on behalf of the company* is at stake.

    You rely on the Delaware Chancery Court's decision in *Schick Incorporated v. Amalgamated Clothing and Textile Workers Union*, 533 A.2d 1235 (Del. Ch. 1987), to support your contention that the iStar Board of Directors is obligated to investigate Ms. Vancil's demand, despite your unwillingness to provide proof that she would have standing to sue on the company's behalf for the alleged wrongs identified in your letters of June 1 and June 15, 2009. Indeed, you rightly observe that the opinion permits anyone—"a stockholder, a supplier or customer or even a busybody"—to make a demand on a company's board of directors. *Id.* at 1241. But the opinion also states quite clearly that a demand

> is really a form of notice designed to afford the corporation's board of directors an opportunity to consider the facts asserted and to exercise its business judgment whether to press any arguable claim the corporation may possess or to take other action. *The board has no obligation to take any specific type of action to comply with a demand under Rule 23.1. The board may, for example, ignore the demand, or it may take other action it deems appropriate if, in the*

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109
Beijing   Berlin   Boston   Brussels   Frankfurt   London   Los Angeles   New York   Oxford   Palo Alto   Waltham   Washington

WILMERHALE

November 23, 2009
Page 2

> *exercise of its good faith judgment the circumstances indicate that the corporation's interests would be served thereby.*

*Id.* at 1240 (emphasis added).

     Ms. Vancil's demand and all subsequent correspondence from your law firm have been received and carefully considered by a Special Committee of iStar's Board of Directors. Please know that, in reviewing this letter and the attendant correspondence, the Committee has been very mindful of its duties. However, with Ms. Vancil having studiously refused to demonstrate her standing, the Committee has no obligation to share with her what actions, if any, have been taken in response to her demand. You have repeatedly refused to provide even the barest minimum of information that would establish your client's standing to represent the company's interests in a derivative action. In light of your intransigence on this issue of fundamental importance to the company, iStar need not provide any response other than the one it has now given you no fewer than three times.

Best regards,

Jeffrey B. Rudman

## VERIFICATION

I, M. Lee Arnold, as agent and attorney-in-fact for Plaintiff Addie Lee Vancil, hereby declare as follows:

Addie Lee Vancil is a shareholder of iStar Financial, Inc. She has held shares of iStar Financial, Inc., stock continuously from the time of the wrongdoing complained of and remains a shareholder. Ms. Vancil has retained competent counsel. Pursuant to Ms. Vancil's instructions and the authority vested in me as her agent and attorney-in-fact, I am ready, willing, and able to pursue this action vigorously on behalf of iStar Financial, Inc. I have read the Verified Shareholder Derivative Complaint. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information and belief.

Signed and Accepted:

Dated: 27 May 2010

M. LEE ARNOLD, agent for ADDIE LEE VANCIL

## CERTIFICATE OF SERVICE

I, Jeffrey M. Norton, hereby certify that a true copy of the VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT was served upon the attorneys of record for each party by electronic mail.

_____
JEFFREY M. NORTON