# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

———————————

No. 10 Civ. 3478 (RJS)

———————————

JAMES KAUTZ,
derivatively on behalf of iStar Financial, Inc.,

Plaintiff,

VERSUS

JAY SUGARMAN, ET AL.,

Defendants.

———————————

No. 10 Civ. 4312 (RJS)

———————————

ADDIE VANCIL,
derivatively on behalf of iStar Financial, Inc.,

Plaintiff,

VERSUS

JAY SUGARMAN, ET AL.,

Defendants.

———————————

OPINION AND ORDER
March 31, 2011

———————————

RICHARD J. SULLIVAN, District Judge:

In these parallel actions, Plaintiffs Addie Vancil ("Vancil") and James Kautz ("Kautz") bring shareholder derivative suits for the benefit of Nominal Defendant iStar Financial Inc. ("iStar" or the "Company") against current and former iStar directors

and officers for breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and related state law claims. Now before the Court are four motions to dismiss the two complaints. For the reasons that follow, those motions are granted in part and denied in part.

## I. BACKGROUND

### A. Facts[1]

Nominal Defendant iStar is a real estate investment trust with a focus on commercial real estate and commercial mortgage financing. (Vancil Compl. ¶ 2.) On July 2, 2007, iStar acquired the $6.27 billion commercial real estate loan portfolio and commercial real estate lending business of Fremont Investment and Loan. (*Id.* ¶ 4; Kautz Compl. ¶ 2.) Plaintiffs allege that although the Fremont acquisition "would ultimately prove disastrous" for iStar, Defendants concealed the impact of the acquisition on the Company's debt and loan portfolio in a series of false and misleading statements. (Kautz Compl. ¶ 3.)

On February 28, 2008, iStar disclosed a $134.9 million write down of its corporate loan and debt portfolio and a $113 million increase to its loan loss provisions in the 4Q 2007 earnings press release. (*Id.* ¶ 5.) Following these disclosures, iStar's stock price declined from more than $27 per share to less than $17 per share – a $1.3 billion market capitalization loss. (*Id.* ¶ 6.)

### B. Procedural History

The 4Q 2007 earnings announcement spawned a flurry of litigation. The first securities class action was filed on April 15, 2008, consolidated with a second class action on November 17, 2008, and reassigned to this Court on May 4, 2009. The consolidated class action (the "Securities Action") is captioned *Citiline Holdings, Inc. v. iStar Financial, Inc.*, No. 08 Civ. 3612 (RJS).

On April 16, 2008 – the day after the first securities action was filed – M. Lee Arnold ("Arnold") filed a parallel derivative suit, captioned *Arnold v. Sugarman*, No. 08 Civ. 3664 (RWS), on behalf of iStar. Arnold was represented by the law firm of Robbins Umeda LLP ("Robbins Umeda") until November 24, 2008, when he voluntarily dismissed the derivative suit after his iStar shares were sold to cover a margin call.

On June 1, 2009, Vancil issued a pre-suit demand on the iStar Board of Directors (the "Board") to "investigate and remedy the violations of law described [therein] as required by Federal Rule of Civil Procedure Rule 23.1 and Maryland law." (Vancil Compl. ¶ 129; *id.*, Ex. A.) The demand letter was signed by Robbins Umeda attorney Craig W. Smith ("Smith") on behalf of Vancil. The iStar Board responded by letter dated June 15, 2009, informing

---

[1]   The following facts are derived from both the *Kautz v. Sugarman* Complaint ("Kautz Compl.") and the *Vancil v. Sugarman* Complaint ("Vancil Compl."). In resolving the instant motions, the Court has also considered the following submissions: (1) Defendants' Joint Memorandum of Law in Support of the Motion to Dismiss the Vancil Complaint ("Defs.' Vancil Mem."); (2) Vancil's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint ("Vancil Opp'n"); (3) Defendants' Joint Reply Memorandum of Law in Support of the Motion to Dismiss the Vancil Complaint ("Defs.' Vancil Reply"); (4) Vancil's Sur-reply in Opposition to the Motion to Dismiss the Complaint ("Vancil Sur-reply"); (5) Defendants' Memorandum of Law in Support of the Motion to Dismiss the Kautz Complaint ("Defs.' Kautz Mem."); (6) Kautz's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint ("Kautz Opp'n"); and (7) Defendants' Joint Reply Memorandum of Law in Support of the Motion to Dismiss the Kautz Complaint ("Defs.' Kautz Reply").

Smith that the Board "has taken the matters raised in the Demand Letter under advisement and has resolved to conduct a reasonable and good faith investigation." (*Id.*, Ex. B.)  Acting as counsel to a special committee of the iStar Board (the "Special Committee"), WilmerHale issued a second response letter dated July 10, 2009, requesting various information about Vancil's stock ownership in order to confirm that "you have a plaintiff who is entitled to make the demand your letter constitutes." (*Id.*, Ex. C.)  In a response letter dated July 16, 2009, Smith took "issue" with the assertion that Vancil must demonstrate an "entitlement" to make demand.  (*Id.*, Ex. D.)  The correspondence between the two firms continued, sometimes heatedly, until November 23, 2009, when WilmerHale concluded that "we are, regrettably, at an impasse" because "you still will not provide proof of your client's continuous ownership of iStar stock."  (*Id.*, Ex. M.)

On March 26, 2010, the Court substantially denied the motions to dismiss in the Securities Action.  *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 517 (S.D.N.Y. 2010).

On April 26, 2010, Kautz filed his derivative shareholder suit (the "Kautz Complaint"), alleging that pre-suit demand on the iStar Board was futile.  On May 28, 2010, Smith – acting on behalf of Vancil – filed a second derivative suit (the "Vancil Complaint"), alleging that pre-suit demand on the iStar Board was wrongfully refused.[2]

---

[2]   The Kautz and Vancil Complaints name the following Defendants: (1) eight current members of the iStar Board: Jay Sugarman ("Sugarman"), Glenn August, Robert W. Holman, Jr., Robin Josephs, John G. McDonald, George R. Puskar, Dale Ann Reiss, and Jeffrey A. Weber; and (2) three former iStar officers: Nicholas A. Radesca ("Radesca"), Timothy J. O'Connor ("O'Connor"), and Catherine D. Rice

The Individual Defendants and iStar filed motions to dismiss both complaints on August 13, 2010.  The *Kautz* motions were fully submitted on October 6, 2010, and the *Vancil* motions were fully submitted on November 29, 2010.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

On a motion to dismiss pursuant to Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Id.*  The Court may resolve "disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."  *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000*); see Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

---

("Rice").  (Kautz Compl. ¶¶ 28-41; Vancil Compl. ¶¶ 17-28.)

## B.  Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must also accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## C.  Rule 23.1

Shareholder derivative suits must satisfy both the general pleading standards of Rule 12(b)(6) and the particular requirements set forth in Rule 23.1.  *See Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir. 2009).  To comply with Rule 23.1, complaints asserting derivative claims must be verified, allege standing, and disavow collusion "to confer jurisdiction that the court would otherwise lack."  Fed. R. Civ. P. 23.1(b)(1-2).  In addition, derivative complaints must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort."   Fed. R. Civ. P. 23.1(b)(3)

(subsections omitted).   Thus, a derivative plaintiff must plead demand or demand futility with specific facts and "may not simply rely on conclusory allegations." *Halpert Enters. v. Harrison*, 362 F. Supp. 2d 426, 429-30 (S.D.N.Y. 2005).    Although Rule 23.1 creates a federal pleading standard for the demand allegation, the underlying demand requirement is governed by state substantive law.  *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991).

## III. DISCUSSION

Defendants move to dismiss the Vancil Complaint under Rule 12(b)(1), Rule 12(b)(6), and Rule 23.1 of the Federal Rules of Civil Procedure.  They also move to dismiss the Kautz Complaint under Rule 12(b)(6) and Rule 23.1.  Faced with motions to dismiss under both Rule 12(b)(1) and 12(b)(6), the Court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Perciballi v. New York*, No. 09 Civ. 6933 (WHP), 2010 WL 3958731, at *2 (S.D.N.Y. Sept. 28, 2010). Accordingly, the Court will begin with the Rule 12(b)(1) inquiry.

### A.  Motions to Dismiss *Vancil* Action

#### 1.  Standing

Defendants first move to dismiss the Vancil Complaint under Rule 12(b)(1) for lack of standing to prosecute the derivative action on behalf of iStar.  *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates*, 436 F.3d 82, 89 n.6 (2d Cir. 2006) (noting that the "proper procedural route" for standing challenges is a motion under Rule 12(b)(1)).  "The question of standing to bring a derivative suit is governed by the

law of the state of organization." *Saltz v. First Frontier, LP*, No. 10 Civ. 964 (LBS), 2010 WL 5298225, at *12 (S.D.N.Y. Dec. 23, 2010); *see Halebian*, 590 F.3d at 204. Because iStar is a Maryland corporation, Maryland law will control. Maryland law limits standing to plaintiffs who (1) were shareholders at the time of the alleged wrongdoing; and (2) continuously maintained share ownership. Md. Code Ann., Corps. & Ass'ns § 4A-802.

In this case, the Complaint alleges that Vancil "is a shareholder of iStar and has been continuously since May 18, 2001" (Vancil Compl. ¶ 15), but fails to attach a verification by Vancil herself. Instead, the attachment is signed by Arnold, who purports to verify the pleadings in his capacity as Vancil's investment advisor, agent, and attorney-in-fact. After Plaintiff's counsel declined the opportunity to amend the verification at the July 16, 2010 pre-motion conference (Pre-Motion Conf. Tr., July 16, 2010, at 6:4, 8:12-13, 8:22-23), Defendants featured the defective verification argument in their opening memorandum. Characterizing Vancil as a "plaintiff in name only," Defendants argued that "M. Lee Arnold, who is not even mentioned in the Complaint and who concededly lacks standing, is the individual actually prosecuting this derivative action on iStar's behalf." (Defs.' Vancil Mem. 13.) In response, Plaintiff's counsel then filed affidavits by Vancil and Arnold which detail Vancil's continuous ownership of iStar stock in order to "moot this technical objection." (Vancil Opp'n 8; *see* Aff. of Addie Lee Vancil, Sept. 22, 2010, Doc No. 26 ("Vancil Affidavit"); Aff. of M. Lee Arnold, Sept. 22, 2010, Doc. No. 27.)

The foregoing verification dispute and the motion to dismiss under Rule 12(b)(1) are intertwined. The Vancil Affidavit carefully alleges that Plaintiff first purchased 500 shares of iStar common stock on May 18, 2001 – years before the alleged violations – and that she "continue[s] to own those shares today." (Vancil Aff. ¶ 3.) Because these allegations suffice to plead continuous ownership under Maryland law, the standing problem disappears if Plaintiff is permitted to cure the verification deficiency by affidavit. If not, the verification problem – and therefore the continuous ownership problem – persists. Accordingly, the question before the Court is whether the disputed affidavits can cure the verification deficiency and thereby establish continuous ownership for purposes of Maryland standing law.

The scant law on the subject of verification by affidavit mitigates in favor of Plaintiff. The seminal case on curative verification is *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570 (S.D.N.Y. 1972), which permitted a plaintiff to file a curative affidavit where "the failure to verify the complaint was merely an oversight on the part of plaintiff's counsel." *Id.* at 578. Given that Defendant raised the verification argument by pre-motion letter dated June 8, 2010 (Decl. of Pamela G. Smith, Nov. 5, 2010, Ex. A, Doc. No. 38), and the parties discussed the issue at the July 16, 2010 pre-motion conference, where Plaintiff repeatedly declined to amend, it is difficult to characterize the instant verification defect as the result of inadvertence. Nonetheless, courts in this Circuit have subsequently permitted verification by affidavit without requiring such an oversight. *See McCagg v. Marquis Jet Partners*, No. 05 Civ. 10607 (PAC), 2007 WL 2454192, at *5 (S.D.N.Y. March 29, 2007) ("[C]onsistent with this District's trend, the Court declines to dismiss the claim for lack of proper or timely verification."); *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 222 (E.D.N.Y. 2005)

("Where appropriate, courts allow plaintiffs to cure a verification defect by submitting an affidavit."); *Zucker v. Katz*, 708 F. Supp. 525, 534 (S.D.N.Y. 1989) (citing cases declining to dismiss an unverified complaint and granting leave to submit an affidavit verifying the complaint).

This result conforms with the underlying purpose of the verification rule, which is "not intended to be a general impediment to shareholder derivative actions," *Tuscano*, 403 F. Supp. 2d at 222, but rather "to ensure that a shareholder's derivative claim has some basis in fact, *i.e.*, is not a strike suit," *Weisfeld*, 58 F.R.D. at 577. Despite the waste and inefficiency occasioned by Plaintiff's insistent failure to amend, the Court is ultimately persuaded that her claim has sufficient basis in fact to warrant verification by affidavit in this case. Because the Court finds that Vancil has successfully cured the verification defect and has thereby alleged continuous ownership, the motion to dismiss under Rule 12(b)(1) is denied.[3]

### 2.  Demand Requirement

Defendants next move to dismiss the Vancil Complaint pursuant to Rule 12(b)(6) and Rule 23.1, arguing that (a) Vancil failed to satisfy the good faith demand requirements of Maryland law, and (b) the Board did not wrongfully refuse Vancil's demand. The Court will consider these companion arguments in turn.

#### a.  Good Faith Demand

A shareholder derivative suit "permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (internal citation and quotation marks omitted). To prevent abuse of this remedy, courts have imposed a requirement "that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* at 96 (internal citation and quotation marks omitted).

As previously noted, Rule 23.1 incorporates the demand requirement into the federal pleading standard for derivative actions. Fed. R. Civ. P. 23.1(b)(3) (requiring a derivative complaint to "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort.") Because substantive law governs the adequacy of demand efforts, *RCM Sec. Fund*, 928 F.2d at 1330, Maryland law applies to the demand requirement analysis.

In *Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001), the Maryland Court of Appeals conducted a comprehensive review of the demand requirement under Maryland law. *See Seidl v. Am. Century Cos., Inc.*, 713 F. Supp. 2d 249, 257 (S.D.N.Y. 2010). Because a derivative action "necessarily intrudes upon the managerial prerogatives ordinarily vested in the directors," the court held that a shareholder must "first make a good faith effort to have the corporation act directly and explain to the court why such an effort either was not made or did not succeed." *Werbowsky*, 766 A.2d at 133.

---

[3]   Because the Court finds that verification by affidavit is permissible in this case, there is no need to reach the parties' dispute about the facial or factual nature of Defendants' motion to dismiss under Rule 12(b)(1).

For that reason, courts will not entertain derivative suits "until it appears that the intra-corporate remedies have been unsuccessfully pursued by the complaining stockholder," meaning that the stockholder "must make demand upon the corporation itself to commence the action, and show that this demand has been refused or ignored." *Id.* at 134-35 (quoting *Parish v. Milk Producers Ass'n*, 242 A.2d 512, 544 (Md. 1968)).

In this case, there is no dispute that Plaintiff's counsel filed a demand letter identifying Vancil as an iStar shareholder and specifying factual allegations regarding alleged misconduct by iStar officers and directors. Defendants challenge not the substance of the demand letter, but the "good faith" character of Vancil's effort to obtain the Board's agreement to act on her demands. Citing *Smachlo v. Birkelo*, 576 F. Supp. 1439 (D. Del. 1983), Defendants argue that shareholders have a duty to "provid[e] the requested information" to the corporation, and that refusal demonstrates a lack of good faith effort. *Id.* at 1444. Because Vancil repeatedly refused to provide the Special Committee with the requested proof of her continuous ownership of iStar shares, Defendants argue that her demand was "illusory" and therefore insufficient. (Defs.' Mem. 20.)

But the authority Defendants invoke does not stand for the proposition that a shareholder must provide proof of standing to sue in order to make a good faith demand under Maryland law. The *Smachlo* decision considered the demand requirement under Rule 23.1 and federal law, but did not address the good faith demand requirement under Maryland law or Delaware law, which applies in the absence of controlling

Maryland authority.[4] Moreover, the *Smachlo* court rejected a demand letter based on failure to identify the alleged shareholder by name – not failure to prove that a properly identified shareholder ultimately had standing to bring suit. *Smachlo*, 576 F. Supp. at 1444 ("A company's board of directors should not be required to act upon the demand of an alleged shareholder when that shareholder fails to properly identify himself.").[5] Although Rule 23.1 requires a derivative complaint to *plead* ownership at the time of the alleged misconduct, the Court is unpersuaded that Maryland law imposes an obligation to *prove* standing at the time of the demand. In the absence of authority for such a proposition, the Court declines to adopt a bright-line rule that would require a shareholder to prove his or her continuous ownership of shares as a prerequisite to making demand. Accordingly, the Court finds that Vancil satisfied the good faith demand requirement.

b. Business Judgment Rule

Defendants argue in the alternative that even if Vancil meets the good faith demand requirement, she has failed to rebut the business judgment presumption afforded to decisions of the iStar Special Committee. (Defs.' Mem. 21.) Because the Committee response to Vancil's letter and subsequent correspondence was within the realm of

---

[4] As both parties acknowledge (*see* Defs.' Vancil Mem. 21 n.13; Vancil Opp'n 20), Maryland frequently refers to Delaware law to address issues on which there is no controlling Maryland authority, *see, e.g.*, *Kramer v. Liberty Lobby Prop. Trust*, 968 A.2d 120, 134 (Md. 2009).

[5] Defendants also cite *Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008), which similarly held that "the board is entitled to know with specificity the identity of the person making the demand." *Id.* at 1058.

sound business judgment, Defendants argue, her demand was not wrongly refused.

As a general matter, once a shareholder demand is made, "the corporation's board of directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded litigation is in the best interests of the corporation." *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 423 (Md. 2009). "If the corporation, after an investigation, fails to take the action requested by the shareholder(s) (*i.e.*, to bring the suit), the shareholder(s) may bring a 'demand refused' action." *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007). "If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard." *Werbowsky*, 766 A.2d at 144.

In determining whether a demand was wrongly refused, a court "defer[s] to the decision of the board or committee not to pursue litigation unless the stockholders can show either that the board or committee's investigation or decision was not conducted independently and in good faith, or that it was not within the realm of sound business judgment." *Bender*, 917 A.2d at 152. Maryland courts have identified six indicia of a reasonable, good faith investigation: (1) whether the committee engaged independent counsel to assist in the investigation; (2) whether the committee produced a report, the length of such report, and whether it documented the committee's procedures, reasoning, and conclusions; (3) whether the committee properly identified the claims at issue; (4) whether the committee reviewed the testimony of or interviewed directors, officers, and employees; (5) whether the committee reviewed documents regarding the challenged transactions; and (6) the number of times the committee met. *Id.* at

155-56; *see Scalisi v. Grills*, 501 F. Supp. 2d 356, 363 (E.D.N.Y. 2007) (applying Maryland law).

In this case, Defendants contend that the iStar Board acted within the bounds of business judgment by forming the Special Committee and retaining WilmerHale as independent counsel in response to Vancil's demand. Defendants also argue that under the business judgment rule, iStar was entitled to rely on the advice of WilmerHale, a firm "with expertise in advising boards of directors and special committees on the fiduciary duties owed when they receive a shareholder demand." (Defs.' Mem. 22.) Because WilmerHale counseled the Special Committee not to complete the investigation after Vancil refused to provide the requested information, Defendants assert that "good faith reliance on WilmerHale must be presumed." (*Id.*)

But the reasonable investigation inquiry is not so mechanical. Rather, "[u]nder the business judgment rule, in assessing the reasonableness of a litigation committee's investigation and conclusions, the focus must be on the fact gathering methodology employed by the committee . . . ." *Boland v. Boland*, 5 A.3d 106, 130 (Md. Ct. Spec. App. 2010). Although the type and scope of the required investigation will "turn on the nature and characteristics of the particular subject being investigated," the relevant question is whether the board "acted on an informed basis in rejecting [the] demand." *Bender*, 917 A.2d at 155 (internal citations and quotation marks omitted). Due to the fact-specific nature of the reasonable investigation inquiry, demand refused cases are frequently decided after some modicum of discovery rather than solely on the pleadings. *See Scalisi*, 501 F. Supp. 2d at 360 (granting motion to terminate derivative litigation "[a]fter plaintiffs conducted their

discovery into the nature of the Committee's investigation"); *Boland*, 5 A.3d at 110 (affirming grant of summary judgment); *Bender*, 917 A.2d at 151 (affirming grant of motion under Maryland Rule 2-502, whereby circuit court conducted a bench "trial on the merits" regarding the reasonableness of the board's investigation).

In the absence of more detailed facts regarding the methodology employed by the iStar Special Committee, the Court cannot decide the reasonableness of the iStar investigation – or the application of the business judgment rule – at this stage of the litigation. Accordingly, the Court will deny the motion to dismiss and permit the parties to conduct limited discovery on the issue of the Committee's investigation.

### 3.   Rule 8

Finally, Defendants move to dismiss the Vancil Complaint pursuant to Rule 12(b)(6) and Rule 8 for failure to state a claim upon which relief can be granted. However, when reviewing the decision of a board or board committee under Maryland law, "a court may not review the merits of the derivative claim unless the presumption of [the business judgment rule] is rebutted." *Boland*, 5 A.3d at 123 (quoting James J. Hanks, *Maryland Corporation Law*, § 7.21[c] (2009 Supp.)). Because the Court requires limited discovery to resolve the business judgment inquiry, the Rule 8 motion to dismiss is hereby denied without prejudice to renewal.

### B.   Motions to Dismiss *Kautz* Action

### 1.   Demand Futility

Defendants first move to dismiss the Kautz Complaint for failure to plead demand futility under Maryland law and Rule 23.1.

The requirements for a viable claim of demand futility under Maryland law are fully set forth in the *Werbowsky* decision. *Werbowsky*, 766 A.2d at 144; *see Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138-39 (2d Cir. 2004). The *Werbowsky* court held that demand futility is a "very limited exception," to be applied only when the allegations or evidence clearly demonstrate:

> (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Werbowsky*, 766 A.2d at 144. This narrow exception to the demand requirement was intended to "focus[] the court's attention on the real, limited issue – the futility of pre-suit demand – and avoid[] injecting into a preliminary proceeding issues that go more to the merits of the complaint." *Id.*; *see Seidl*, 713 F. Supp. 2d at 258.

In this case, Kautz concedes that he made no demand on the iStar Board. (*See* Kautz Opp'n 20 n.24.) Instead, he pleads a series of reasons why demand should be excused based on the prior refusal of the Vancil Demand and conflicts of interest among a majority of the iStar directors. For the following reasons, the Court finds each of these arguments to be without merit.

### a.   Prior Refusal

Kautz primarily alleges that "[d]emand is excused as [sic] in light of the Board's shocking response (or lack thereof) to the Vancil Demand." (Kautz Compl. ¶ 151(a).)

Based on the Board's "refusal of the Vancil Demand, and its explanations for doing so," Kautz argues that "a reasonable shareholder would not believe that the Board could have considered a pre-suit demand in good faith and within the ambit of the business judgment rule." (*Id.*)  But Maryland law recognizes no such exception to the demand requirement.  Even under the "more permissive" Delaware standard for demand futility, *Seidl*, 713 F. Supp. 2d at 260, it is well settled that the board's response to one derivative plaintiff cannot form the basis for an assertion of demand futility by another.  *See Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 n.2 (Del. 1988); *Decker v. Clausen*, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989).

Kautz attempts to salvage this argument by asserting that it is the *manner* rather than the fact of the Board's previous refusal that excuses demand here.  (Kautz Opp'n 20 n.23.)  Citing *Werbowsky*, he argues that "the process resulting in the refusal of the Vancil Demand demonstrates that the Board was committed to the decision in dispute such that the Board could not be reasonably expected to respond to a demand in good faith and within the ambit of the business judgment rule."  (*Id.*)  To adopt such an analysis would be to conflate the reasonableness inquiry in a demand refused action and the futility inquiry in a demand excused action.  In the absence of supporting authority, the Court declines to graft an additional exception onto the *Werbowsky* framework.

b.  Conflicts of Interest

Kautz also alleges that demand is excused because a majority of the iStar directors "face a substantial likelihood of liability" or otherwise "lack independence from demonstrably interested directors." (Kautz Compl. ¶ 151(b)-(c).)  The Kautz Complaint identifies the following eight directors as members of the iStar Board at the time of filing: Sugarman, August, Holman, Josephs, McDonald, Puskar, Reiss, and Weber (together, the "Demand Directors").  (*Id.* ¶ 151.)  What follows are Plaintiff's various attempts to cobble together a "majority" of interested directors among that list.[6]

First, Kautz alleges that demand is excused as to Holman, Josephs, and Puskar due to their membership on the iStar Audit Committee.  The Complaint alleges that these Defendants breached their fiduciary duties of due care, loyalty, and good faith because the Audit Committee "allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings," "failed to ensure that adequate internal controls were in place," and "reviewed and approved the Company's credit loss reserve policy." (*Id.* ¶ 151(b).)  Apart from the dispositive fact that the Audit Committee members do not constitute a majority of the iStar board, *Werbowsky*, 766 A.2d at 144, such generalized allegations fail to plead a disabling conflict or commitment on the part of the minority.  Kautz supplies no factual allegations regarding the involvement of these three Audit Committee members – who are not named as defendants in the corresponding securities class action – in the alleged misconduct.

---

[6]  Kautz cites a Delaware case, *Beneville v. York*, 769 A.2d 80, 85-87 (Del. Ch. 2000), for the proposition that where a board comprises even numbers of directors, plaintiffs meet their burden by showing that half the directors could not properly respond to the demand.  (Kautz Opp'n 15.)  Because Kautz fails to reach even the 50 percent threshold, the Court need not reach the merits of this argument.

Plaintiff's argument for demand futility based on Audit Committee membership rests on a single case, *Felker v. Anderson*, No. 04 Civ. 0372 (ODS), 2005 WL 602974, at *3 (W.D. Mo. Feb. 11, 2005) (applying Maryland law), wherein the court excused demand based in part on allegations that the defendants approved the dissemination of false and misleading press releases. However, "*Felker* has been criticized . . . by other courts as an improper application of Maryland law and as generally unpersuasive." *Seidl*, 713 F. Supp. 2d at 258 n.13 (citing cases). Because the Court cannot reconcile the cursory analysis of *Felker* with the "very limited" demand futility exception recognized in *Werbowsky*, the Court finds that Kautz has failed to plead demand futility based on the Audit Committee membership of Holman, Josephs, and Puskar.

Kautz also alleges that demand is excused with respect to the seven Demand Directors who participated in decisions permitting the resignation of Radesca and the retirements of O'Connor and Rice. (Kautz Compl. ¶ 151(d)-(f).) This argument takes two forms, one in the Complaint and another in the opposition papers.

In the Complaint, Kautz alleges that demand is excused because allowing Radesca, O'Connor, and Rice to retire or resign when the Board had grounds to terminate them for cause was a "waste of corporate assets" and therefore "not a protected business judgment." (*Id.*) But *Werbowsky* explicitly rejected this argument. "[D]emand is not excused under Maryland law based on a plaintiff's speculation that 'a majority of the directors approved or participated in some way in the challenged transaction or decision.'" *Seidl*, 713 F. Supp. 2d at 260 (quoting *Werbowsky*, 766 A.2d at 143). The fact that iStar

directors "previously approved transactions subsequently challenged in a derivative suit does not inevitably lead to the conclusion that those directors, bound by their fiduciary obligations . . . , would refuse to pursue the suit." *Id.* Indeed, these are precisely the sort of "non-specific or speculative allegations of wrongdoing" that are insufficient to plead a director conflict. *Sekuk Global Enters. Profit Sharing Plan v. Kevenides*, 2004 WL 1982508, at *4 (Md. Cir. Ct. May 25, 2004).

In the opposition papers, Kautz makes a corollary argument that demand is excused because a majority of the Demand Directors face "personal financial liability" due to the resignation of Radesca and the retirements of O'Connor and Rice. (Kautz Opp'n 15.) Kautz argues that "it is reasonable to infer that Radesca, O'Connor, and/or Rice each executed mutual releases with the Board upon their respective departures from iStar (as would be extremely likely, and in fact, customary, in such circumstances)." (*Id.*) But the pleadings allege no facts to support the existence of mutual releases between iStar and the departing Defendants. The factual allegations that do appear in the Kautz Complaint undercut such an inference by alleging "upon information and belief" that iStar's SEC filings do not disclose any releases by iStar of claims against Radesca, O'Connor, or Rice. (Kautz Compl. ¶¶ 124 n.4, 127 n.5, 131 n.6.) Because the Court can draw reasonable inferences only on the basis of well-pleaded facts, *Iqbal*, 129 S. Ct. at 1950, the absence of relevant factual allegations here is fatal to Plaintiff's argument.

Finally, Kautz alleges that demand is excused with respect to Sugarman because his "principal professional occupation . . . is his employment with iStar as its CEO, pursuant to which he has received and

continues to receive substantial monetary compensation and other benefits." (Kautz Compl. ¶ 151(c).) Kautz further alleges that demand is excused with respect to Sugarman because the Court previously "found *indicia* that defendants Sugarman, Radesca, Rice, and O'Connor were engaged in a scheme to defraud iStar's investors." (*Id.* ¶ 137.) Whatever the merits of these arguments regarding Sugarman, they cannot suffice to plead demand futility with respect to a majority of the Demand Directors.

Accordingly, the Court finds nothing to suggest that a majority of the Demand Directors was "so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith." *Werbowsky*, 766 A.2d at 144. Because Kautz has failed to show that a demand would be futile in this case, his derivative claims must be dismissed for failure to make a pre-suit demand on iStar's Board.

### 2.  Rule 8

Because the issue of demand futility is fatal to the Kautz Complaint, the Court does not reach the alternative motion to dismiss for failure to state a claim under Rule 12(b)(6) and Rule 8.

### III. CONCLUSION

For the reasons stated above, (1) Defendants' motions to dismiss the Vancil Complaint are HEREBY DENIED pending limited discovery on the reasonableness of the Board's investigation; and (2) Defendants' motions to dismiss the Kautz Complaint are HEREBY GRANTED.

The *Vancil* parties shall (1) submit a joint letter regarding the scope of contemplated discovery in accordance with

this ruling no later than April 18, 2011;[7] and (2) appear at a status conference on April 29, 2011, at 3:00 p.m.

The Clerk of the Court is respectfully directed to terminate the motions located at Doc. Nos. 18 and 19 on *Vancil v. Sugarman* (No. 10 Civ. 4312) and Doc. Nos. 34 and 36 on *Kautz v. Sugarman* (No. 10 Civ. 3478) and to terminate the *Kautz v. Sugarman* case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated:  March 31, 2011
New York, New York

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/11
```

---

[7]  The parties are reminded that "[t]he burden is on the party challenging the [board's] decision to establish facts rebutting the presumption that the directors acted reasonably and in the best interests of the corporation." *Bender*, 917 A.2d at 153 (internal citation and quotation marks omitted).